**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chad William Allen,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-02030-PHX-JJT<br><br>**ORDER** |

    At issue is the denial of Plaintiff Chad Willian Allen's Application for Child's Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 19, Def. Br.), and Plaintiff's Reply (Doc. 20, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 19–34) as upheld by the Appeals Council (R. at 1–5).

**I.    BACKGROUND**

    Plaintiff filed an application for Child's Insurance Benefits on May 21, 2019, when he was 17 years and 11 months old, for a period of disability beginning on the same date, as amended. (R. at 19.) His claim was denied initially on October 30, 2019, and upon reconsideration on April 7, 2020. (R. at 19.) On January 26, 2021, Plaintiff appeared before

the ALJ for a telephonic hearing regarding his claim. (R. at 19.) On March 19, 2021, the ALJ denied Plaintiff's claim (R. at 19–34), and on October 8, 2021, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision (R. at 1–5).

The Court has reviewed the record and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of borderline intellectual functioning/neurocognitive disorder, autism spectrum disorder, obsessive compulsive disorder (OCD) not otherwise specified, post-traumatic stress disorder (PTSD), and attention deficit-hyperactivity disorder (ADHD). (R. at 21.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 34.) In so doing, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 22.) The ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform a full range of work with certain non-exertional limitations, including that he is limited to simple, unskilled work with only occasional, superficial contact with the public and coworkers and no crowd contact. (R. at 24.) Accordingly, the ALJ found that Plaintiff can perform work in the national economy, including as a harvest worker, dishwasher, and sweeper/cleaner, such that Plaintiff is not under a disability as defined in the Social Security Act. (R. at 33–34.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.

*Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III.  ANALYSIS

Plaintiff raises two arguments for the Court's consideration, namely, (1) the ALJ's reasons for discounting the opinions of Plaintiff's treating and examining medical care

providers were neither adequately explained nor supported by substantial evidence in the record (Pl. Br. at 12–24), and (2) the ALJ erred in evaluating Plaintiff's symptom testimony (Pl. Br. at 24–27). The Court examines these arguments in turn.

**A.    Treating and Examining Medical Care Providers**

Plaintiff first contends that the ALJ gave insufficient reasons for discounting the opinions of Psychiatric Mental Health Nurse Practitioner (NP) Kathryn Goshorn, State Agency Examining Psychologist An Nguyen, Psy.D., and examining neuropsychologist Valerie Kemper, Psy.D. (Pl. Br. at 12–24.)

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[ ] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F. 4th at 790. Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and

- 4 -

consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

NP Goshorn began treating Plaintiff in July 2020. (R. at 679, 784.) Based on her regular treatment of Plaintiff, on January 22, 2021, NP Goshorn completed a Mental Impairment Residual Functional Capacity Questionnaire. (R. at 784–89.) She opined that Plaintiff was "unable to meet competitive standards" in nine functional areas:

> Maintain attendance and be punctual within customary, usual strict tolerances; Maintain attention for two hour segments; Sustain an ordinary routine without special supervision; Complete a normal workday and workweek without interruptions from psychologically based symptoms; Perform at a consistent pace without an unreasonable number and length of rest periods; Ask simple questions or request assistance; Accept instructions and respond appropriately to criticism from supervisors; Respond appropriately to changes in a routine work setting; [and] Deal with normal stress.

(R. at 786.) She also concluded that Plaintiff has "no useful ability to function" in "be[ing] aware of normal hazards and tak[ing] appropriate precautions." (R. at 786.) Among other limitations, she opined that Plaintiff has marked difficulties maintaining social functioning and in concentration, persistence, or pace. (R. at 788.)

The ALJ did "not find the limitations set forth persuasive" because "the claimant and his mother report[ed] that he was doing well on his medications with improvement in his anger and irritability." (R. at 30.) This reason is unfounded. Simply because Plaintiff was doing better on his medications does not mean he is not limited in the ways that NP oshorn noted based on her course of treatment of Plaintiff. The ALJ also pointed to records stating that Plaintiff interacted well with psychological examiners and "plays video games online with others." These, again, do not address the numerous limitations NP Goshorn listed, or at best only touch on a few of them. For example, the fact that Plaintiff did not decompensate in the presence of psychological examiner, or played a video game online with others, does not mean he is able to maintain attendance and be punctual, sustain an ordinary routine without special supervision, ask simple questions or request

assistance, or respond appropriately to criticism or to changes in work setting. The Court disagrees that NP Goshorn's treatment notes, read as a whole, do not support her conclusions, and NP Goshorn's conclusions are also consistent with those of other examining medical service providers. The ALJ thus erred in disregarding NP Goshorn's opinions.

Among the other medical opinions in the record is that of Dr. Nguyen, a clinical psychologist who examined Plaintiff on October 7, 2019. (R. at 563.) Upon testing Plaintiff, Dr. Nguyen found him to have "extremely low" intelligence, including working memory, processing speed, and full-scale intelligence, and diagnosed Plaintiff with Borderline Intellectual Functioning. Dr. Nguyen observed Plaintiff would laugh or giggle after instructions were given or in response to a task assignment. (R. at 565.) Dr. Nguyen opined that Plaintiff would have "difficulty carrying out detailed instructions; sustaining concentration; performing activities within a schedule; working in coordination with others; sustaining an ordinary routine without special supervision; and completing a normal workday at a consistent pace." (R. at 568.) These conclusions were consistent with NP Goshorn's independent opinions.

The ALJ found Dr. Nguyen's opinions "unpersuasive" that Plaintiff would have difficulty sustaining concentration, performing to a schedule, completing a workday at a consistent pace, and sustaining work without special supervision. (R. at 28.) Among the ALJ's reasons was that Plaintiff can "play video games for up to 8 hours," a fact the ALJ mentioned numerous times in his opinion. (R. at 28.) But again, the fact that Plaintiff can play video games does not somehow invalidate the limitations set forth by Dr. Nguyen, particularly with regard to carrying out instructions, sustaining a work routine without special supervision, processing information at an acceptable speed and to a schedule, or working in coordination with others in a work environment.

The ALJ also noted that Plaintiff volunteered at a food bank, which he loved and "did well"—skills that the ALJ stated transferred to the work environment. (R. at 28.) But a full examination of the record shows that when Plaintiff was left alone to volunteer at the

food bank by his mother, she said "it did not go well." (R. at 148–49.) Plaintiff "needs reinforcement or being redirected . . . often. [The food bank] wrote me a letter and they said, you know, he's a great kid. He's got a great personality. We really appreciate him. But basically, they wanted the family to come back if he were to come." (R. at 149.)

The ALJ also concluded that Plaintiff could perform personal hygiene and manage himself, but that conclusion is also not supported by the record. Plaintiff's mother had to constantly remind Plaintiff to attend to self-care, hygiene and grooming; he did not brush his teeth often or well and had to have oral surgery to repair damage due to poor hygiene; and while he could be left alone in the shower, he often did not clean himself and had to be sent back to shower again. (R. at 625, 645–63, 701.) The ALJ also noted Plaintiff could perform shopping by himself on a regular basis, but that statement is also not supported by the record. Plaintiff testified that he could not remember, but he thought he might have shopped for "some pens or a notepad." (R. at 135–36.) Defendant goes so far as to contend in its Response that the ALJ's conclusions regarding Plaintiff's abilities are supported by the fact that Plaintiff can drive because he drove the family's golf cart across the street to Costco. (Def. Br. 2–3.) Again, the record does not bear this out. Plaintiff's mother only testified that if she had Costco office supplies, Plaintiff would help her carry the supplies to the office. (R. at 148.) The record reveals that it is undisputed that Plaintiff is not able to drive and does not have a driver's license. In sum, the ALJ again erred in failing to give sufficient reasons supported by substantial evidence in the record to discount Dr. Nguyen's opinions.

Next, Dr. Kemper, a neuropsychologist, interviewed Plaintiff on June 1, 2020, and examined him on June 15 and 22, 2020, to re-evaluate his autism and ADHD for the state Division of Developmental Disabilities after Plaintiff turned 18. (R. at 624.) Dr. Kemper also reviewed Plaintiff's school records, including 2019 reports of "referrals for aggression, disrespect toward persons on campus, dishonesty, and harassment." (R. at 626.) In testing, Dr. Kemper noted Plaintiff "presented with atypical/odd behaviors and would laugh awkwardly and at inappropriate times," his eye contact was "intermittent," and he once "trapp[ed] the psychometrist's foot between his feet." (R. at 627.)

Dr. Kemper opined that Plaintiff's testing performance was

> indicative of anxiety interference and/or attention difficulties. His performance on tasks of executive functioning indicates impaired alternating attention/mental flexibility, slower speed of information processing, and that he is easily distractible, forgetful, and has difficulty maintaining attention to task[s]. Impaired verbal reasoning skills were found, indicating difficulty for communication, understanding verbal instruction, verbal fluency and word finding, and overall abstract verbal reasoning.

(R. at 627.) Dr. Kemper also noted that Plaintiff suffered impaired short-term memory as well as motor speed and persistence in his dominant hand. (R. at 627.) She concluded that Plaintiff continued to have symptoms consistent with Autism Spectrum Disorder, including "reduced reciprocal communication, awkward laughing, loud and flat speech, and . . . rare[ ] nonverbal behaviors," which required "substantial support" for social communication, restricted and repetitive behaviors, ADHD, impulse control, and overall conduct, among others. (R. at 630.) She thus concluded that Plaintiff would be "moderately impaired" in numerous areas of functional capacity in the work environment, including remembering simple locations and work-like procedures, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, and working in coordination with or proximity of other without being too distractible." (R. at 629–30.) These opinions were consistent with those of NP Goshorn and Dr. Nguyen.

While the ALJ stated "the moderate limitations suggested here are persuasive," the ALJ did not consider Plaintiff's limitations as described by Dr. Kemper to preclude Plaintiff from working; in other words, the ALJ construed Dr. Kemper's report solely through her use of the word "moderate." (R. at 29.) The Court agrees with Plaintiff that a reading of the report as a whole demonstrates more serious limitations, as summarized above, and the ALJ gave no reason supported by the record to disregard the more serious limitations set forth by Dr. Kemper. For example, Dr. Kemper stated Plaintiff needed

substantial support for social communication and to sustain an ordinary work routine, among other things, and that limitation is not included in the ALJ's formulation of Plaintiff's RFC. And as stated above, the ALJ's reasons for discounting NP Goshorn's and Dr. Nguyen's opinions—many of which are stated again by Dr. Kemper—were not supported by substantial evidence in the record.

In the absence of adequate reasons supported by substantial evidence to discount the opinions of NP Goshorn and Dr. Nguyen, and certain opinions of Dr. Kemper, the Court will credit them as a matter of law. *See Lester*, 81 F.3d at 834. And in addressing the hypothetical incorporating the limitations put forth by these doctors, the vocational expert testified that Plaintiff could not work in the national economy. (R. at 153.)

### B.   Plaintiff's Symptom Testimony

The ALJ also erred in evaluating Plaintiff's symptom testimony for many of the same reasons the Court discussed above.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).)). For example, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

As discussed above, the ALJ's statements regarding the fact that Plaintiff plays video games and can partially attend to personal hygiene or that certain symptoms have

improved with medication are not convincing reasons to discount Plaintiff's testimony.[1] The ALJ also stated that the severity of Plaintiff's reported symptoms is inconsistent with the medical record but erred by failing to demonstrate how with any specificity. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Upon the Court's review, Plaintiff's symptom testimony is consistent with the medical record and his responses in interviews with clinical psychologists. The ALJ thus also erred in discounting Plaintiff's symptom testimony.

### C. Credit as True

The credit–as–true standard, if applied, results in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three–part standard is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*.

The credit–as–true rule applies in this case. First, the record in this case was fully and extensively developed, such that further proceedings would be unproductive. Next, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of NP Goshorn and Dr. Nguyen, and certain opinions of Dr. Kemper. The ALJ also failed to properly weigh Plaintiff's symptom testimony. Finally, if the improperly discredited evidence were credited as true, then considering the whole record, including the testimony of the Vocational Expert (R. at 153), the ALJ would be required to find that Plaintiff is disabled.

---

[1] The ALJ also stated Plaintiff participated in Special Olympics. The record is not clear whether this occurred or whether it was aspirational. In any event, it is not a convincing reason to find that Plaintiff's symptoms are not as severe as he testified or, even more importantly, his limitations are not as severe as the examining and treating medical care providers assessed them to be.

1    Therefore, it is unnecessary to remand for further administrative proceedings, and
2    the Court will remand for a calculation and entry of benefits.

3    **IT IS THEREFORE ORDERED** reversing the March 19, 2021 decision of the
4    Administrative Law Judge, (R. at 19–34), as upheld by the Appeals Council on October 8,
5    2021 (R. at 1–5).

6    **IT IS FURTHER ORDERED** remanding this case to the Social Security
7    Administration for a calculation of benefits.

8    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment
9    consistent with this Order and close this case.

10   Dated this 31st day of March, 2023.

Honorable John J. Tuchi
United States District Judge